<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| MARK SULLIVAN,<br><br>    Plaintiff,<br><br>       v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>    Defendant. | Civil No. 12-7668 (RMB)<br><br>      **OPINION** |

**APPEARANCES**:

Richard L. Frankel
Bross & Frankel, P.A.
102 Browning Lane, Building C-1
Cherry Hill, NJ 08003
    Attorneys for Plaintiff

Maria Fragrassi Santangelo
United States Attorney's Office
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
    Attorneys for Defendant

**BUMB**, UNITED STATES DISTRICT JUDGE:


Plaintiff Mark Sullivan (the "Plaintiff") seeks judicial

review pursuant to 42 U.S.C. § 405(g) of the final decision of

the Acting Commissioner of Social Security (the "Commissioner")

denying his application for Disability Insurance Benefits

("DIB") and Social Security Supplemental Income ("SSI"). For
the reasons set forth below, the Court will vacate the decision
of the ALJ and remand.

I.  **Background**

    a) Procedural History

Beginning on October 14, 2009, Plaintiff filed applications
for SSI and DIB, alleging a disability onset date of December
20, 2007. (Administrative Record "R." 134-39). Plaintiff's
disability onset date was amended to May, 9, 2009 at the
administrative hearing. (R. 30). Plaintiff's claims were denied
on March 8, 2010, (R. 59-60), and again on August 20, 2010,
after Plaintiff timely filed a Request for Reconsideration. (R.
61-62). Plaintiff then filed a request for a hearing before an
Administrative Law Judge ("ALJ"), which was held before the
Honorable Jonathan L. Wesner, ALJ, on May 31, 2011; Plaintiff
appeared at the hearing and was represented by counsel. (R. 28-
58).

The ALJ issued his determination on August 25, 2011,
finding that Plaintiff was not disabled and denying Plaintiff's
claim for benefits. (R. 11-23). Thereafter, Plaintiff filed a
Request for Review of Hearing Decision with the Appeals Council
on October 18, 2011. (R. 8). The request for review was denied

and, thus, the ALJ's decision became the final decision of the Commissioner of Social Security on October 12, 2011. (R. 2-6).[1]

   b) Hearing Testimony

During the ALJ hearing, Plaintiff testified that he was 42 years old and had previously worked in heavy construction. (R. 31-32). Plaintiff has not worked since 2008. (R. 31). Plaintiff suffered a heart attack in May of 2009, his disability onset date. (R. 30).

With respect to his physical symptoms, Plaintiff testified that he "can't really stay in an upright position for long periods of time," (R. 32), and that he has pains throughout his body, including his legs and shoulder, that require him to lay down or be in different positions throughout the day. (R. 33). Plaintiff testified that he has continued to smoke even after his heart attack. (R. 34). As a result of the heart attack, Plaintiff states that he has experienced a loss of strength and stamina. (R. 42).

Plaintiff stated that he has shoulder pain and that he has received cortisone treatments. (R. 35-36). Plaintiff is right-handed and testified that his shoulder pain impacts his range of

---

[1] The parties do not address why the request for review by the Appeals Council on October 18, 2011 is dated after the Council denied that request on October 12, 2011 (R. 2-8). Thus, this Court will not deem this discrepancy material for purposes of the instant analysis.

motion, as he can only raise his arm to "almost get it level, but nothing higher than that." (R. 36). As a result, Plaintiff avers that he has lost strength in his arm and cannot lift things to any sort of height; the most he can lift is a small grocery bag, and he has decreased grip strength and gets numbness and tingling in his hand and forearm that prevent extended fine manipulation. (R. 36-37).

Plaintiff also testified that he has received treatment for his right foot from a podiatrist, including injections, and uses a cane to help keep his balance, even though no doctor prescribed the use of that cane. (R. 36-37). Plaintiff states that he can stand for between 10-20 minutes before experiencing pain and is most comfortable laying down with his legs elevated. (R. 38-39). He also soaks his feet and uses a massage chair to help his foot and shoulder pain. (R. 40). Plaintiff also discussed his sleep apnea diagnosis and his use of a CPAP to relieve his symptoms; he testified that he usually sleeps two to two-and-a-half hours at a time, and then is awake for an hour. (R. 39). With respect to household activities, Plaintiff testified that he helps with grocery shopping a "couple of times a month," and helps his wife she needs assistance with things like dusting. (R. 41).

Pursuant to the above testimony, the ALJ stated on the record that he was downgrading Plaintiff's Residual Functional

Capacity ("RFC")[2] to "eliminate[] all but sedentary work." (R. 45). During the hearing, the ALJ consulted with Louis Cellozzi, a Vocational Expert ("VE"), to determine the types of work Plaintiff could perform. (R. 44). Based on the hypotheticals presented by the ALJ, including the downgraded RFC, the VE testified that the Plaintiff could perform the positions of surveillance system monitor, information clerk, and charge account clerk. (R. 47-50). The VE testified that any impact of limitations of fingering and manipulation on the surveillance system monitor and information clerk positions "would be nominal" and that the use of the keyboard in those jobs could be modified if there was an incapacity. (R. 54).

### c) The ALJ's Decision

Applying the requisite five-step analysis,[3] the ALJ concluded that Plaintiff met the insured status requirements of the Social Security Act and had not engaged in substantial gainful activity since May 9, 2009. (R. 16). The ALJ found that Plaintiff has the severe impairments of coronary artery disease, status post myocardial infarction, and sleep apnea. (R. 16-19). In making the "severe impairment" findings, the ALJ relied on

---

[2] See discussion on pages 19-23 infra.
[3] Described on pages 9-13 infra.

Plaintiff's medical records related to his conditions, including:

- The report of Plaintiff's podiatrist, Dr. Joseph Santomauro, who treated Plaintiff for plantar fasciitis of the right heel. (Exhibit 1F);
- The records of Plaintiff's hospitalization on May 9, 2009 due to acute inferior wall myocardial infarction. (Exhibit 3F);
- Treatment notes from Cardiovascular Associates by Dr. George Mark from June 11, 2009, October 2009, November 2009, and April 2010, (Exhibits 5F & 8F) and January 2011 by Dr. Kartik Giri. (Exhibit 16F);
- Treatment notes from Plaintiff's treating physician, Dr. Gross from July 26, 2009, November 17, 2009, March 2010, (Exhibit 4F), September 2010 and May 2011. (Exhibit 14F);
- The records of David Schneider, a medical consultant for the New Jersey Division of Disability, from March 2010. (Exhibit 7F);
- Records from Pulmonary and Sleep Associates of South Jersey for sleep apnea evaluation and the findings of Dr. John Bermingham. (Exhibit 13F); and
- The treatment notes of Dr. Evangelisto from July 2010 related to Plaintiff's shoulder pain. (Exhibit 12F).

Based on the above, the ALJ determined that Plaintiff's impairments did not meet the criteria for listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19). Furthermore, based on his findings, and considering Plaintiff's symptoms that "can reasonably be accepted as consistent with the objective medical evidence and other evidence," (R. 19) the ALJ determined that Plaintiff had the following residual functional capacity:

- Lift and carry ten points occasionally and less than ten pounds frequently;

- Sit for six hours in an eight-hour workday;
- Stand/walk at least two hours in an eight-hour workday; and
- Occasionally push/pull with his lower extremities.

(R. 19). In making these findings, the ALJ stated that the Plaintiff "has some subjective limitations, but not of the intensity, frequency or duration alleged." (R. 20). In support of the conclusion that the Plaintiff's "alleged limitations appear[] exaggerated compared to the objective medical evidence of record," (R. 20), the ALJ cited a Function Report (Exhibit 6E), completed by the Plaintiff in November 2009, wherein he reported that he did light cleaning and laundry, takes care of his two dogs, and had no difficulty paying attention. (R. 20).

Moreover, The ALJ predicated his findings on the following medical determinations:

- Dr. Gross' November 2009 report that the Plaintiff could stand/walk for up to two hours in an eight-hour workday and had no sitting limitations or limitations with his extremities. (R. 20 citing Exhibit 4F);
- Dr. Gross' May 2011 report stating that Plaintiff's pain and fatigue are only occasionally severe enough to interfere with his ability to maintain attention and concentration. (R. 20 citing Exhibit 14F);
- Dr. Santomauro's finding that Plaintiff did not need a hand-held assistive device to walk. (R. 20 citing Exhibit 1F);
- The reports of Dr. Mark, Plaintiff's treating cardiologist, (R. 20-21 citing Exhibits 5F & 8F) including the results of a Nuclear Treadmill Stress Test completed in January of 2011 showing that Plaintiff had a good exercise tolerance. (R. 21, citing Exhibit 16F); and

- Pulmonary function studies from September of 2010 and the results of Plaintiff's sleep study and subsequent CPAP use. (R. 21 citing Exhibit 13F & 14F).

In evaluating the above, the ALJ noted that, with respect to Plaintiff's right shoulder pain, "there is no objective medical evidence documenting that this impairments [sic] imposes significant limitations on the [Plaintiff's] ability to perform basic work-related activities." (R. 21). In drawing this conclusion, he noted Dr. Gross' report dated June 1, 2011 (Exhibit 15F) wherein Dr. Gross determined that Plaintiff:

- Had significant limitations with reaching, handling, or fingering in the right upper extremity and pain and weakness;
- Could sit for less than two hours in an eight-hour day;
- Had to keep his legs elevated when sitting for prolonged periods of time;
- Required a cane for standing and walking; and
- Could rarely lift/carry less than ten pounds.

In evaluating this assessment by Dr. Gross, the ALJ determined that he "impeach[ed] Dr. Gross' assessment as it is poorly supported by his treatment notes and contravened by substantial medical evidence from other treating and examining physicians (SSR 96-2p)(See Exhibits 1F, 4F, 5F, 8F, 12F & 14F)." (R. 21). Thus, the ALJ concluded that the substantial evidence necessitated a finding that Plaintiff's impairments did not

impose such severe limitations on his RFC as to preclude the performance of all work activity. (R. 22).

After performing the RFC assessment, the ALJ determined that Plaintiff was unable to perform any past relevant work. (R. 22). Then, considering Plaintiff's age, education, work experience, and RFC as determined, the ALJ found that there were jobs in significant numbers in the national economy that Plaintiff could perform. (R. 22). In making this finding, the ALJ relied on a VE, who had been asked to determine whether jobs exist in the national economy for an individual with the claimant's age, education, work experience and residual functional capacity. (R. 22-23). The VE found that Plaintiff would be able to perform jobs as a surveillance system monitor, information clerk, and charge account clerk. (R. 23).

As a result of the above findings, the ALJ ultimately determined that the Plaintiff is not disabled under Section 1614(a)(3)(A) of the Social Security Act. (R. 23).


## II.   <u>Standard of Review</u>

A reviewing court must uphold the Commissioner of Social Security's factual findings if they are supported by "substantial evidence," even if the court would have decided the inquiry differently. 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Knepp v.</u>

<u>Apfel</u>, 204 F.3d 78, 83 (3d Cir. 2000); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Cons. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)); <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999). Where the evidence is susceptible to "more than one rational interpretation, the Commissioner's conclusion must be upheld." <u>Ahearn v. Comm'r</u>, 165 F. App'x 212, 215 (3d Cir. 2006) (citing <u>Daring v. Heckler</u>, 727 F.2d 64, 70 (3d Cir. 1984); <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." <u>Ogden v. Bowen</u>, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing <u>Brewster v. Heckler</u>, 786 F.2d 581 (3d Cir. 1986)). Stated differently,

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978) (quoting <u>Arnold v. Sec'y of Health, Ed. & Welfare</u>, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotations omitted); <u>see</u> <u>also</u> <u>Guerrero v.</u>

Comm'r, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006) ("The [administrative law judge's] responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."), aff'd, 249 F. App'x 289 (3d Cir. 2007).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," Burnett v. Comm'r, 220 F.3d 112, 122 (3d Cir. 2000). See also Fargnoli, 247 F.3d at 42 ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the reviewing court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r, 181 F.3d 429, 431 (3d Cir. 1999)).

## "Disability" Defined

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," [he] is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform [his] past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to [his] past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether [he] is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

III. **Analysis**

    a) <u>The Opinion of the Plaintiff's Treating Physician</u>[4]

       Plaintiff avers that the ALJ erred in rejecting the opinion of the Plaintiff's primary care physician, Dr. David Gross, contained in a June 1, 2011 report (Exhibit 15F), which found that Plaintiff had significant limitations.  More specifically, Plaintiff contends that the ALJ erred when, in discussing Dr. Gross' opinion, he simply stated "I impeach Dr. Gross' assessment as it is poorly supported by his treatment notes and contravened by substantial medical evidence from other treating and examining physicians (SSR 96-2p)(See Exhibits 1F, 4F, 5F, 8F, 12F, & 14F)." (R. 19 & 21).  Plaintiff argues that this "'string-cite' rationale," (Pl.'s Reply Br. at 3), falls short of the requirements of SSR 96-2p and the analysis required pursuant to 20 C.F.R. § 404.1527 because the ALJ did not explicitly discuss the evidence he referenced and offered no comment regarding the weight given go Dr. Gross' opinion other than indicating it was "impeached."  Moreover, Plaintiff argues

---

    [4] Plaintiff's brief states that the issue presented in this case is "whether Plaintiff is capable of sustained work, i.e., full-time work." (Pl.'s Br. at 12).  This Court, thus, construes Plaintiff's arguments regarding the ALJ's determinations with respect to his treating physician as a challenge to the ALJ's step four finding of Residual Functional Capacity.  <u>See</u> <u>Johnson v. Comm'r</u>, 529 F. 3d 198, 201 (3d Cir. 2008)(construing arguments regarding treating physician's opinions as a challenge to the ALJ's step four finding).

that when the evidence in the string-cite is actually examined, it does not support the ALJ's conclusion, but rather provides support for Dr. Gross' ultimate opinions.  In response to Plaintiff's arguments, the Commissioner responds by contending that the ALJ's opinion properly noted that Dr. Gross' opinion was inconsistent with other substantial evidence of record, including the findings of Dr. Santomauro, Dr. Mark, Dr. Schnieder, and Dr. Evangelisto.

SSR 96-2p states, in relevant part: "If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted."  That said, an ALJ must consider every medical opinion and decide how much weight to give the opinion. 20 C.F.R. § 404.1527(c).  An ALJ must accord "[t]reating physicians' reports . . . great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (internal citations omitted).  The ALJ must also consider the findings and opinions of state agency medical consultants and other sources consulted in connection with ALJ hearings. 20 C.F.R. § 404.1527(e)(2)(i).  If non-examining medical source opinions are supported by medical evidence in the record, they may constitute substantial evidence and override a treating physician's

opinion.  Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J.
1995), aff'd per curiam, 85 F.3d 611 (3d Cir. 1996).  "When a
conflict in the evidence exists, the ALJ may choose whom to
credit but cannot reject evidence for no reason or for the wrong
reason . . . The ALJ must consider all the evidence and give
some reason for discounting the evidence she rejects." Plummer,
186 F.3d at 429 (internal citations omitted).  An ALJ errs by
failing to address evidence in direct conflict with his
findings. Landeta v. Comm'r, 191 F. App'x. 105, 110 (3d Cir.
2006).

        This Court agrees that the ALJ has failed to adequately
address evidence in the record that conflicts with his finding
that Dr. Gross' conclusions were "impeach[ed]."  In his opinion,
the ALJ bolstered his determination that Dr. Gross' conclusions
were unfounded by citing, inter alia, Exhibit 14F - Dr. Gross'
treatment records from January 2010 through May 2011.  In doing
so, however, the ALJ failed to resolve or even address certain
conflicts.  For example, the ALJ did not address Dr. Gross'
finding in Exhibit 14F that Plaintiff's pain would "prevent
[him] from performing normal, fulltime work activities on a
frequent (more than 3-4 days per month) basis," or that physical
activity such as walking, standing, bending, stooping, moving of
extremities would mean that "[g]realty increased pain is likely
to occur, and to such a degree as to cause total abandonment of

16

the task." (R. 335). Instead, the ALJ focused only on the portions of this record that arguably, supports his determination – i.e., sections dealing with fatigue and Plaintiff's ability to concentrate. (R. 18 & 20). As such, this Court cannot find that the ALJ's finding is supported by substantial evidence, and this Court will remand for resolution of this conflicting probative evidence. See Fargnoli, 247 F.3d at 42 ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided.").

Plaintiff is also correct that the Commissioner seeks to improperly bolster the ALJ's determination with records not cited in his opinion. For example, the Commissioner seeks to rely on the findings of Dr. Schneider contained in Exhibit 7F in support of the ALJ's rejection of Dr. Gross' findings. This Court, however, cannot read the findings of Dr. Schneider into the ALJ's "string-cite" rejection of Dr. Gross' findings. See Id. at 43 n.7 (rejecting the District Court's attempt to rectify ALJ's error by analyzing records not mentioned by the ALJ).

While the ALJ may again find Dr. Gross' determinations to be unfounded on remand, he must provide a more thorough treatment and explanation for doing so. Id. at 43 ("Although

the ALJ may weigh the credibility of evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting the evidence."). Citing only to portions of an exhibit while failing to address other portions of that very exhibit that contradict the ALJ's findings will not suffice. See Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)("[W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.").

b) ALJ's Finding of Severity at Step Two

Plaintiff argues that the ALJ erred by not properly considering his plantar fasciitis and shoulder impairments to be "severe" impairments at step two of the Sequential Evaluation Process. The ALJ, however, did find in Plaintiff's favor at step two, holding that Plaintiff suffered from the severe impairments of coronary artery disease, status post myocardial infarction, and sleep apnea. (R. 16-19). Thus, "even if [the ALJ] had erroneously concluded that some of [Plaintiff's] other impairments were non-severe, any error was harmless." Salles v. Comm'r, 229 F. App'x 140, 145 n.2 (3d Cir. 2007)(citing

Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005)).

Thus, remand is not warranted on these grounds. See Williams v.

Comm'r, No. 12-5637, 2013 U.S. Dist. LEXIS 118525, at *48

(D.N.J. Aug. 21, 2013)(finding that remand was not warranted to

reconsider the step two determination as any error regarding a

severe impairment determination was harmless).


c) The ALJ's Credibility Determinations

This Court will consider together Plaintiff's arguments

that the ALJ failed to properly weigh Plaintiff's plantar

fasciitis and shoulder impairment in determining Plaintiff's

Residual Functional Capacity ("RFC") and whether the ALJ erred

in his credibility determinations with respect to Plaintiff's

subjective complaints regarding those same impairments.

RFC is what a person is still able to do despite the

limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a)

and 416.945. Social Security Ruling 96-8p ("SSR" 96-8p),

dictates that the RFC assessment is a "function-by-function

assessment based upon all the relevant evidence of an

individual's ability to do work related activities." SSR 96-8p.

In order to meet the requirements of 96-8p, the ALJ "must

'specify the evidence that he relied upon to support his [or

her] conclusion.'" Pearson, 380 F. Supp. 2d at 506 (citation

omitted). Moreover, "the ALJ's residual functional capacity assessment must 'be accompanied by a clear and satisfactory explanation of the basis on which it rests.'" Id. (quoting Fargnoli, 247 F.3d at 41).

In addition,

> [T]he ALJ is required to "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p. Moreover, such a discussion must be made by the ALJ in narrative form, "citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p.

Pearson, 380 F. Supp. 2d at 505-06.

Plaintiff's first RFC-related argument is that the ALJ did not assess any upper-extremity limitations in his formation of Plaintiff's RFC. Moreover, Plaintiff contends that, had the ALJ found Plaintiff's plantar fasciitis to be severe, he might have further limited Plaintiff's ability to stand and walk, which would have impacted Plaintiff's ability to perform 8 hours of work activity.

This Court notes, however, that during the hearing, the ALJ modified Plaintiff's RFC determination found at Exhibit 7F in order to reflect Plaintiff's "lower-extremity problems" and reduced the occasional lifting to 10 pounds and frequent lifting

to less than 10 pounds to "eliminate[] all but sedentary work."
(R. 45). Furthermore, the ALJ noted that he "did somewhat
downgrade the claimant's residual functional capacity to take
into account at least to the extent to which his testimony could
be deemed believable, his symptoms, including pain." (R. 20).

Despite this "downgrade," Plaintiff similarly avers that
the ALJ erred in his determination of Plaintiff's credibility
with respect to his subjective complaints. More specifically,
the Plaintiff contends that the ALJ failed to give any explicit
consideration to the Plaintiff's hearing testimony and only
credited portions of Plaintiff's Function Report related to what
Plaintiff could do despite his limitations while failing to
credit sections of that same report discussing what he could not
do. (Exhibit 6E). In response, the Commissioner argues that the
ALJ reasonably found that Plaintiff's daily activities and the
record's medical evidence undermined the existence of totally
disabling symptomatology.

"An ALJ must give serious consideration to a claimant's
subjective complaints of pain, even where those complaints are
not supported by objective evidence." Mason v. Shalala, 994 F.2d
1058, 1067 (3d Cir. 1993) (citing Ferguson v. Schweiker, 765
F.2d 31, 37 (3d Cir. 1985)). "Where medical evidence does
support a claimant's complaints of pain, the complaints should
then be given 'great weight' and may not be disregarded unless

there exists contrary medical evidence." Id. at 1067-68
(citations omitted).  Nevertheless, "[a]lthough the ALJ may
weigh the credibility of the evidence, he must give some
indication of the evidence that he rejects and his reason(s) for
discounting that evidence." Fargnoli, 247 F.3d at 43.

For reasons similar to those discussed above with respect
to the ALJ's treatment of Plaintiff's treating physician's
opinion, this Court finds that remand is warranted as to the
assessment of Plaintiff's credibility related to his subjective
limitations.  As Plaintiff correctly points out, the ALJ cites
to portions of Plaintiff's Function Report (Exhibit 6E) that
support his conclusions as to the intensity, frequency and
duration of this subjective limitations, but seemingly ignores
the portions of that same report that conflict with his
conclusions.  For example, while the ALJ notes that Plaintiff
reported that he can do light cleaning, laundry, help with his
two dogs and had no difficulty paying attention, he does not
address the Plaintiff's assertions in that same report that
state that he cannot walk more than twenty-feet without rest,
that reaching is painful, and that he cannot be upright for more
than five minutes. (R. 178). While the ALJ stated that he
"downgraded" Plaintiff's RFC to take into account the "extent to
which his testimony could be deemed believable," (R. 20), he
says this immediately after writing that the Plaintiff's

"alleged limitations appeared exaggerated compared to the objective medical evidence." (R. 20). It is, therefore, unclear what evidence was credited and what evidence was rejected with respect to Plaintiff's subjective limitations in the formulation of his RFC, and the ALJ must revisit this issue on remand. See Cotter, 642 F.2d at 705 ("[W]e need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.").

Although the ALJ may again determine that Plaintiff's subjective complaints are not credible on remand under a more thorough analysis, the ALJ failed to adequately address the conflicting evidence in the record. It is the responsibility of the ALJ to weigh the evidence and make determinations on contradicting evidence. Id. Thus, this Court remands this case for further discussion of Plaintiff's subjective limitations as related to Plaintiff's RFC.[5]

---

[5] With respect to Plaintiff's argument that the ALJ failed to consider Plaintiff's hearing testimony, this Court agrees that the ALJ did not err in failing to reiterate every word of that testimony to the extent such testimony is either irrelevant or not probative. See Johnson, 529 F.3d at 204-05. While an ALJ need not cite all evidence where such evidence is irrelevant/not probative, it is clear that he "may not reject pertinent or probative evidence without explanation." Id. at 204. On

## IV.  Conclusion

For the reasons stated above, this Court will vacate the decision of the ALJ and remand.  An accompanying Order will issue this date.


s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated November 8, 2013

---

remand, probative hearing testimony should be considered as appropriate.